## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**CALVIN WITHERS**                                               **PLAINTIFF**

v.                              **No. 4:11-cv-669-DPM**

**LEON JOHNSON and**
**PULASKI COUNTY, ARKANSAS**                         **DEFENDANTS**

### ORDER

**1. Introduction.** Calvin Withers worked for the Pulaski County Circuit

Court (Division One) for about a decade, first as a deputy bailiff, then as a

probation officer. Circuit Judge J. Leon Johnson presides over that division.

He was Mr. Withers's supervisor. Withers hurt his back at work and took

medical leave. His doctor eventually cleared Withers to go back to work with

a lifting restriction. Pulaski County policy required Withers to immediately

contact his supervisor, provide his work release, and get instructions about

returning to work. Withers tried several times without success to reach

Johnson by telephone. Six days after being released to work, Withers faxed

his release to the Pulaski County H.R. office. Johnson let Withers go that

same day. County policy also provides that not following through on a work

release equals resignation. Withers contends Johnson and Pulaski County

discriminated against him for taking FMLA leave, failed to accommodate his disability, and fired him in retaliation.  Pulaski County and Judge Johnson each move for summary judgment.  *№ 25 & 28.*

Withers has abandoned his federal age discrimination claims, his state law claims against all parties, and his individual-capacity claims against Johnson under the Rehabilitation Act and the ADA.  *№ 35 at 2-3.*  Those claims are dismissed without prejudice.  What remains are interference and retaliation claims under the FMLA, and discrimination and retaliation claims under the ADA and § 504 of Rehabilitation Act of 1973, against Pulaski County and Judge Johnson in his official capacity.  The Court views all the facts in the light most favorable to Withers.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)(en banc).

**2. Claims against the County**.  Everyone agrees that the Circuit Court, acting through the Circuit Judge, employed Withers.  Pulaski County says it is not Withers's joint employer and therefore cannot be liable for any alleged discrimination.  29 C.F.R. § 825.106(a).  Joint employment is a question of law.  *Catani v. Chiodi*, 2001 WL 920025 at 6 (D. Minn. 2001).  The Court must consider the entire employment relationship to determine if the County was

-2-

Withers's joint employer.   29 C.F.R. § 825.106(b).   Material circumstances include who had the power to hire and fire Withers, who supervised his work schedule and the conditions of his employment, who determined his rate and method of payment, and who maintained his employment records.   *Henson v. Hawker Beechcraft Corp.*, No. 4:09-cv-440-JLH, 2010 WL 3167528 at 5 (E.D. Ark. 10 Aug. 2010).

Pulaski County couldn't hire and fire Withers or supervise his schedule. Those powers, Withers agrees, were Johnson's alone.   № *26-3 at 8*.   Withers has offered no evidence that the County controlled his employment conditions, exercised day-to-day control over him, or managed the details of his work.   *See, e.g., Braden v. County of Washington*, 2010 WL 1664895 (W.D. Pa. 23 April 2010).   The County did handle his payroll and benefits, but purely administrative tasks like this are not enough to create a joint-employment relationship.   *Spears v. Choctaw County Commission*, 2009 WL 2365188 (S.D. Ala. July 30, 2009); *Catani*, 2001 WL 920025 at 7.   All of this weighs against any joint employment.   What weighs for it are the County policies about returning to work after medical leave.   № *28-1 at 70-72*.   These policies frame this dispute.   It is undisputed though, that Judge Johnson was the only one who

-3-

could, and who did, apply those policies to Withers when it came to keeping the job. That ultimate control, in combination with all the other job circumstances, makes the legal difference. Pulaski County was not Withers's joint employer with the Circuit Court. Absent an employee-employer relationship, Withers has no FMLA and ADA claims against the County. 29 U.S.C. § 2615(a)(2); 42 U.S.C. §§ 12111(2) & 12112(a). The County's motion for summary judgment is therefore granted.

**3. Claims against Judge Johnson**. Here are the material facts, viewed in Withers's favor where disputed. In mid-March 2011, Withers hurt his back moving files. He went to the ER and was released to work with a ten-pound lifting restriction. He worked for the next week on his usual schedule, taking off for physical therapy and doctor visits. His doctor eventually put more restrictions on his work and, in late March, concluded Withers could not work at all. Withers was on FMLA leave during April. In early May, his doctor released him to work on a Tuesday with one restriction: "No Lifting Greater Than 25 Pounds." № 28-1 at 68. County policy required Withers to notify his supervisor immediately after his release. "If the attending physician has determined that the employee is able to return to work, the employee will

-4-

immediately provide a copy of the release to the supervisor." *№ 28-1 at 72.*

Due to medication, Withers was unable that Tuesday to drive to the courthouse and hand deliver his notice of fitness for work. He tried but was unable to reach Johnson by phone on Tuesday and Wednesday. He left voicemails on the Judge's direct line. The messages were vague: "this is Calvin Withers, give me a call back;" and "this is Calvin Withers, could you give me a call back, I left a message yesterday, could you holler back at me[?]" *№ 26-2 at 5-6.* Johnson never responded. Withers called chambers on Friday afternoon, but the Judge had left for the weekend. *№ 26-2 at 7.* At Withers's request, a law clerk sent Johnson a text, which he got, asking that he call Withers. Withers could have gone to the Courthouse on Wednesday, Thursday, or Friday, but didn't.

Judge Johnson fired Withers on Monday—six days after Withers's doctor released him. Because of privacy concerns, Withers chose not to fax his notice to the Judge's chambers or to Linda Lidell, a Pulaski County human resources employee, until the same Monday that Johnson mailed Withers the termination letter. Another County policy says "[e]mployees who fail to return to work as designated are considered to have resigned." *№ 28-1 at 72.*

-5-

Withers got notice of his termination eight days after he was cleared to return to work.

The Court evaluates Withers's FMLA, ADA, and § 504 retaliation claims under the familiar *McDonnell Douglas* burden-shifting framework. *Ballard v. Rubin*, 284 F.3d 957, 960 n. 2 (8th Cir. 2000). The same framework applies to his ADA disparate-treatment claim. *Fenney v. Dakota, Minnesota & Eastern Railroad Co.*, 327 F.3d 707, 711-12 (8th Cir. 2003).

**ADA and § 504 Claims.** Withers has not made a *prima facie* case of retaliation or disparate treatment under the ADA or the Rehabilitation Act. For both, he must show he is disabled, can perform the essential functions of his position with or without reasonable accommodation, and suffered an adverse employment action because of the disability. *Stewart v. Independent School District No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007). The fighting issue is causation.

No reasonable person could conclude that Withers was fired because of his 25 pound lifting restriction, or that some other "protected trait . . . actually motivated [Johnson's] decision." *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004). Withers's job required minimal physical effort. His duties consisted

-6-

primarily of typing, filing, writing, working on a computer, and talking with probationers. Withers acknowledged that an assistant probation officer does not have to lift 25 pounds or more. № 26-2 at 4. His physical restriction was incidental to his job performance. Before he went on FMLA leave, Withers was restricted from squatting, bending, stooping, squatting, and lifting, pushing, or pulling more than *ten pounds* while at work. № 26-1 at 15-16. Johnson never objected to Withers's more limiting restrictions; no reasonable juror could find that he fired Withers because of a less onerous restriction on lifting.

**FMLA Retaliation.** Withers *prima facie* case of FMLA retaliation is a close question. He must show that he engaged in a protected activity, an adverse employment action was taken against him, and a causal connection existed between the two. *Amir v. St. Louis University*, 184 F.3d 1017, 1025 (8th Cir. 1999). It comes down to causation again. Withers's points out that his firing occurred right after his FMLA leave. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) (quotation omitted).

-7-

Withers adds that Johnson did not want to respect or accommodate his disability.    But Withers acknowledges that he neither asked for an accommodation nor felt he needed one to do his job.  № 26-3 at 23.  Utilizing FMLA rights does not insulate an employee from discipline for violating an employer's policies.  *Estrada v. Cypress Semiconductor Inc.*, 616 F.3d 866, 871 (8th Cir. 2010).  But giving Withers the full benefit of the record, and all possible reasonable inferences, the Court concludes that he has made a *prima facie* case here.

Johnson has articulated a clear, legitimate, and non-discriminatory reason for firing Withers.  Withers failed to provide immediate notice of his eligibility to return to work, contrary to County policy.  № 26-8.  Johnson's reason doesn't have to be "wise, fair, or even correct, ultimately, so long as it truly was the reason for [Withers's] termination."  *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998).  Withers acknowledges that he could have brought the medical release to Johnson any time during the three business days after getting it.  Withers called and waited instead.  Withers's messages, moreover, were incomplete: "call me back" is not "I'm released and able to come back to work."  Withers's obligations to follow County policy did not

-8-

end when he took medical leave. *Chappell v. Bilco Co.*, 675 F.3d 1110, 1115 (8th Cir. 2012).

Withers must therefore offer enough evidence to justify a jury's conclusion that Judge Johnson's reason — the policy violation — was a pretext for FMLA retaliation. Withers could show that Johnson's decision had no factual basis, that similarly situated employees were treated differently, or that Johnson deviated from his usual policies. *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006). Withers takes the last route: he says that Johnson required him to disclose his personal medical information in violation of the ADA. № 38 at 7. The argument is murky. Is Withers saying that the County policy about providing work releases as soon as possible violates the ADA? It is also not clear how Johnson allegedly deviated from the policy. No evidence suggests that Johnson asked or required Withers to fax the information — Linda Liddel, a Pulaski County HR employee, made that request. And on prior returns to work, Withers provided similar documentation to human resources without concern. № 28-1 at 23-24. Ultimately, this argument misses the point. Whether to fax or not to fax became a question only because Withers decided against personal delivery.

-9-

No one required him to disclose any health-related information by fax or telephone. The point of a work release is that the employee is able to return to the workplace; Withers chose not to do so. His FMLA retaliation claim fails as a matter of law.

**FMLA Interference**. Withers also argues that Johnson tried to chill his exercise of FMLA rights. *№ 38 at 16*. Withers must show that Johnson "denied or interfered with . . . substantive rights under the FMLA." *Stallings v. Hussman Corp.*, 447 F.3d at 1050. No jury question exists here. Withers exercised his FMLA rights. There is no evidence Johnson denied or interfered with those rights. Withers's job was waiting for him. But he did not follow Pulaski County's policy about notifying his supervisor promptly and clearly that he could return with a specific restriction. Requiring prompt and actual delivery of a work release, so the employer can get the employee back to work as soon as possible while honoring any restriction, benefits everyone involved.

**ADA & § 504 Failure to Accommodate.** Withers's failure-to-accommodate claims stumble at the threshold. He first needs to show that his request for accommodation was reasonable. *Peebles,* 354 F.3d at 768. But

-10-

Withers admits he never told Johnson he needed an accommodation.  *№ 26-2 at 5-6.*  Johnson had no way of knowing that Withers was ready to work so long as he didn't lift more than 25 pounds.  Withers also says there was no interactive process.   He's right.   An employer must know about the employee's disability and a requested accommodation before there can be any interaction.  *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 951 (8th Cir. 1999).  Withers says he *intended* to ask Johnson to eliminate some of his marginal job functions that might require lifting, but never did.  *№ 38 at 11.* He also agrees that, due to the nature of his job, he did not need an accommodation.  Johnson had previously accommodated Withers's need for more stringent accommodations.  No reasonable juror could find that Johnson objected to this similar, less burdensome accommodation.

* * *

The motions *№. 25 & 28,* are granted.  Withers's complaint is dismissed with prejudice.

So Ordered.

DPMarshall Jr.

D.P. Marshall Jr.
United States District Judge

1 July 2013

-11-